Filed by YH D.C.

Feb 10, 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

20-20073-CR-SCOLA/TORRES

CASE NO. _____

18 U.S.C. § 371
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

v.

JAY PASSERINO,

        Defendant.

_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

1. Affiliate marketing was a form of performance-based marketing conducted via email solicitations and promotional materials made available on internet websites. An affiliate marketing campaign involved the promotion of a product or service designed to convince the audience to take a specific action, including purchasing a product or service or opening and funding a trading account.

2. A binary option was a type of option contract in which the payout depended on the outcome of a discrete event, typically related to whether the price of a particular asset—such as a stock or a commodity—would rise above or fall below a specified amount. Unlike standard options, investors in binary options were not being given the opportunity to actually purchase a stock or a commodity but, rather, were effectively predicting whether its price would be above or below a certain amount at a certain time of the day. The option holder was typically promised

that when the binary option expired, the option holder would receive either a pre-determined amount of cash or nothing.

3. Company 1 was established as an Arizona limited liability company in or around 2012. On or about February 19, 2014, Company 1 became a Florida limited liability company with a principal place of business in Miami, Florida. Company 1 operated as an affiliate marketing business for binary options and was paid for developing and distributing marketing campaigns about binary options to customers in the United States and around the world using interstate and foreign wires.

4. Individual 1 was a resident of Miami, Florida who served as the owner and president of Company 1. Individual 1 supervised and controlled all Company 1 business.

5. Defendant **JAY PASSERINO** was a resident of Miami, Florida who was employed by Company 1 from in or around 2013 through in or around October 2016. **PASSERINO** held himself out as Company 1's vice president.

6. Company 2 was an Israeli company that worked as a broker intermediary for Company 1. Company 2 was owned by Individual 2, a resident of Israel, and another individual. **JAY PASSERINO** worked for Company 2 from in or around December 2016 through in or around May 2018.

7. Company A was a company owned and controlled by **PASSERINO** that he used to receive payments.

## CONSPIRACY TO COMMIT WIRE FRAUD
### (18 U.S.C. § 371)

From in or around 2013, through in or around May 2018, in the Southern District of Florida, and elsewhere, the defendant,

**JAY PASSERINO,**

2

did knowingly and intentionally, that is, with the intent to advance the conspiracy, combine, conspire, and agree with Individual 1 and other individuals known and unknown to the United States Attorney, to commit certain offenses against the United States, namely, wire fraud, that is, to knowingly and willfully, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, for the purposes of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

8. It was a purpose of the conspiracy for the defendant and his co-conspirators to induce investors to deposit money through the use of false and fraudulent statements concerning the profitability of binary options investments and/or trading software, as well as the nature, risks, and suitability of investing in binary options. It was a further purpose of the conspiracy to induce individuals to deposit funds with binary options brokers, who would then pay commissions to the defendant and his co-conspirators.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

9. Company 1 operated as an affiliate marketing business for binary options services, disseminating marketing campaigns about binary options to customers in the United States and around the world using interstate and foreign wires. **JAY PASSERINO** and Individual 1 were paid commissions by operators of binary options "brands" to funnel traffic to the operators'

websites and platforms. These commissions were based on the volume of investors and potential investors who were directed to the binary options platforms by the affiliate marketing websites and media campaigns.

10. To drive traffic to binary options websites and platforms, Individual 1 and other co-conspirators would write and procure scripts with fictitious characters and trading results. These scripts contained false and misleading claims about, among other things, the suitability of investments being advertised and the historical performance of other investors. **JAY PASSERINO**'s co-conspirators, including Individual 1, would then hire someone to produce sales videos based on the scripts. The Company 1 campaigns created by Individual 1 and other co-conspirators falsely claimed that individuals had earned large returns by investing on the advertised binary options websites and featured actors falsely claiming to be investors who had done so.

11. Company 1 also created written solicitation communications and disseminated them to investors and potential investors via email using interstate and foreign wires. While employed by Company 1, **JAY PASSERINO**, at the direction of Individual 1, created false emails to customers and actively participated in the dissemination of false information to customers. **PASSERINO** recognized that Company 1's email solicitations to customers contained material misrepresentations about the profitability of investing, the success of other investors and the expected returns of investing in binary options, but disseminated them to customers anyway.

12. **JAY PASSERINO** knew that the solicitations and other marketing materials used by Company 1 were fictional and untrue, and **PASSERINO** deliberately avoided learning that the vast majority of customers who were funneled to binary options brokers by Company 1's campaigns lost money. During one conversation, **PASSERINO** asked Individual 1 whether customers who invested were making money. Individual 1 responded, in sum and substance, that it was not **PASSERINO**'s business to know whether customers who invested were making money.

4

**PASSERINO** did not inquire further and avoided learning about whether Company 1's business practices were legitimate.

13. In addition to the creation and dissemination of marketing materials, **JAY PASSERINO** also performed a variety of other work for Company 1, including making and receiving payments, reviewing reports of commissions earned, hiring other employees, and generally running operations for Company 1, under the direction of Individual 1. **PASSERINO** also had certain responsibilities for dealing with Company 1's "sub-affiliates," other entities that worked on marketing campaigns and were paid a portion of the commissions generated by Company 1.

14. Between October 2013 and October 2016, **PASSERINO** was paid approximately $1.8 million by Company 1 for his work for the company. On a monthly basis beginning in at least October 2013 and continuing until at least October 2016, Company 1 made payments by wire to a Bank of America account ending in 2935 in the name of Company A, an entity controlled by **PASSERINO**, as compensation for his work on behalf of Company 1.

15. In or around December 2016, following his departure from Company 1, **PASSERINO** went to work for Individual 2 at Company 2, and continued working for him until in or about May 2018. **PASSERINO** was largely responsible for Company 2's U.S. operations during that time, and continued to do affiliate marketing work in his role at Company 2.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the object and purpose thereof, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, and elsewhere, at least one of the following overt acts, among others:

1. On or about July 3, 2014, **JAY PASSERINO**, at the direction of Individual 1, ordered other employees of Company 1 to disseminate emails containing false statements marketing a binary options campaign.

2. On or about February 26, 2014, **JAY PASSERINO** made arrangements via email to send a sub-affiliate a payment from Company 1 as a prize for a contest run by Company 1 to get its sub-affiliates to promote one of its binary options campaigns.

3. On or about December 29, 2014, **JAY PASSERINO** sent an email to another Company 1 employee providing detailed instructions on how to set up a website for an upcoming binary options campaign.

4. On or about February 2, 2016, **JAY PASSERINO**'s Bank of America account ending in 2935 in the name of Company A received a wire in the amount of $30,000 from Company 1.

5. On or about July 29, 2016, **JAY PASSERINO**'s Bank of America account ending in 2935 in the name of Company A received a wire in the amount of $30,000 from Company 1.

6. On or about October 21, 2016, **JAY PASSERINO**'s Bank of America account ending in 2935 in the name of Company A received a wire in the amount of $7,500 from Company 1.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE
### (18 U.S.C. § 981(a)(1)(C))

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **JAY PASSERINO**, has an interest.

2.     Upon conviction of a violation of Title 18, United States Code, Section 371, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense of conviction.

3.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty.

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, made applicable through Title 28, United States Code, Section 2461(c).

*[signature]*
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

ROBERT ZINK, CHIEF
FRAUD SECTION, CRIMINAL DIVISION
UNITED STATES DEPARTMENT OF JUSTICE

L. RUSH ATKINSON, ASSISTANT CHIEF
FRAUD SECTION, CRIMINAL DIVISION
UNITED STATES DEPARTMENT OF JUSTICE

BY: *[signature]*
KATIE RASOR, TRIAL ATTORNEY
FRAUD SECTION, CRIMINAL DIVISION
UNITED STATES DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

JAY PASSERINO,

_____ Defendant. _____/

CASE NO._____

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

**Court Division:** (Select One)
✓ Miami ___ Key West
___ FTL ___ WPB ___ FTP

New defendant(s)          Yes ___   No ___
Number of new defendants  ___
Total number of counts    ___

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:   (Yes or No)   No
   List language and/or dialect   _____

4. This case will take __0__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)
   I    0 to 5 days       ✓            Petty     ___
   II   6 to 10 days      ___          Minor     ___
   III  11 to 20 days     ___          Misdem.   ___
   IV   21 to 60 days     ___          Felony    ✓
   V    61 days and over  ___

6. Has this case previously been filed in this District Court?   (Yes or No)   No
   If yes: Judge                         Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?   (Yes or No)   No
   If yes: Magistrate Case No.
   Related miscellaneous numbers:
   Defendant(s) in federal custody as of
   Defendant(s) in state custody as of
   Rule 20 from the District of

   Is this a potential death penalty case? (Yes or No)   No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?   Yes ___   No ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?   Yes ___   No ✓

KATHERINE RASOR
TRIAL ATTORNEY, DEPARTMENT OF JUSTICE
COURT ID NO. A5502621

*Penalty Sheet(s) attached                                    REV 8/13/2018

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** JAY PASSERINO

**Case No:** _____

Count #1:

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 371

**\*Max. Penalty:** Five Years' Imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| JAY PASSERINO, | ) | |
| | ) | |
| *Defendant.* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*